IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID WESTERLUND** and **WESTERLUND LOG HANDLERS, LLC**, <br><br>  Plaintiffs, <br><br> v. <br><br> **MURPHY OVERSEAS USA ASTORIA FOREST PRODUCTS, LLC**; **MURPHY OVERSEAS U.S.A. TIMBER AND LAND DEVELOPMENT, LLC**; **MURPHY OVERSEAS U.S.A. HOLDINGS, LLC**, and **DENNIS J. MURPHY**, <br><br>  Defendants. | Case No. 3:15-cv-1296-SI (LEAD) <br><br> (Consolidated with Case Nos. 3:15-cv-1072-SI and 3:15-cv-1459-SI) <br><br> **OPINION AND ORDER** |

Stephen C. Thompson and George L. Kirklin, KIRKLIN THOMPSON & POPE LLP, 1000 SW Broadway, Suite 1616, Portland, OR 97205. Of Attorneys for Plaintiffs.

Michael E. Haglund and Michael K. Kelley, HAGLUND KELLEY LLP, 200 SW Market Street, Suite 1777, Portland, OR 97201. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Three consolidated lawsuits arise out of business deals between Plaintiffs and

Defendants. The Plaintiffs in the lead action are David Westerlund and Westerlund Log

Handlers, LLC ("WLH"). They are collectively referred to as "the Westerlund Parties." The

PAGE 1 – OPINION AND ORDER

Defendants in the lead action are Murphy Overseas USA Astoria Forest Products, LLC ("AFP"); Murphy Overseas U.S.A. Timber and Land Development, LLC; Murphy Overseas U.S.A. Holdings, LLC; and Dennis J. Murphy. They are collectively referred to as "the Murphy Parties." Before the Court is the Westerlund Parties' motion for partial summary judgment against the Murphy Parties' first and second counterclaims. For the reasons that follow, the Westerlund Parties' motion is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

WLH handles and processes logs for export near Astoria, OR. AFP purchases logs and exports them internationally. WLH and AFP entered into a contract (the "Log Handling Contract") under which WLH agreed to provide log handling and processing services to AFP.

David Westerlund is a guarantor of WLH's obligations under the Log Handling Contract. The Westerlund Parties also allege that they verbally entered into a joint venture partnership with the Murphy Parties to govern their commercial relationship. The Murphy Parties deny the existence of the asserted partnership.

The present motion concerns the Westerlund and Murphy Parties' litigation against China National Building Materials Import and Export Corporation ("China National"). China National, which was one of WLH's customers, claimed a security interest in WLH's equipment and a right of attachment to any payments made by AFP to WLH. The litigation ended in a settlement agreement (the "Settlement") signed by the Westerlund Parties, the Murphy Parties, and China National.

The Settlement states that the Murphy Parties "will pay [China National] $2,550,000 in full (the "Payment"), and [the Westerlund Parties] will sell, assign and transfer all of [their] right [*sic*], title and interest in the Equipment to [the Murphy Parties] in exchange for [the Murphy Parties] making the Payment to [China National]." ECF 71-2 at 2 (Settlement ¶ 2). "Upon receipt of the Payment," China National "release[d] and forever discharge[d] [the Murphy and Westerlund Parties] . . . from any liability . . . arising out of or in any way connected with any fact, matter or thing that was or which could have been advanced in the" litigation. ECF 71-2 at 2-3 (Settlement ¶ 4). The Murphy and Westerlund Parties also released China National from all such claims. ECF 71-2 at 3 (Settlement ¶¶ 5-6).

In addition, the Settlement contains the following integration clause:

> This Agreement represents the full and final expression of the parties' intent, and supersedes all other communications, negotiations or agreements between the parties regarding the content herein. In the event of any conflict between the terms of the Agreement and any prior or contemporaneous agreement

> between the parties other than the Murphy Agreement, this
> Agreement shall control.

ECF 71-2 at 5 (Settlement ¶ 15). The Settlement also contains a Bill of Sale, attached to the Settlement as Exhibit B. The Bill of Sale states: "In consideration of Buyer's [AFP's] payment of $2,550,000 paid to [China National], Seller [WLH] hereby sells to Buyer all of Seller's rights, title, and interests in the equipment described on Exhibit A . . . ." ECF 71-2 at 12. "Seller acknowledges that the payment . . . constitutes valuable, fair, and commercially reasonable consideration for the sale of the Equipment to Buyer." ECF 71-2 at 12. The Bill of Sale is signed only by David Westerlund as managing member of WLH.

In the relevant portions of its first counterclaim against WLH, AFP alleges that it entered into the Settlement in order to prevent China National from repossessing the equipment that WLH was using to perform the Log Handling Contract. Thus, AFP alleges, the Settlement was an effort to mitigate its damages from WLH's breach of the Log Handling Contract. AFP further alleges that although it paid China National $2.55 million for WLH's equipment, the equipment was only worth $1 million. AFP allegedly agreed to purchase the equipment "for $1.55 million more tha[n] the equipment was worth," "in return for a release for itself and WLH." ECF 68 ¶ 60(j). AFP now seeks, as mitigation damages against WLH, $1.55 million that AFP paid to China National. In its second counterclaim, AFP alleges that David Westerlund is also liable for these damages as a guarantor under the Log Handling Contract.

## DISCUSSION

The Westerlund Parties move to dismiss the portions of the Murphy Parties' first and second counterclaims relating to the Murphy Parties' payment (by AFP) of $1.55 million to China National. The Westerlund Parties argue that these damages are not recoverable under general principles of contract law. In addition, even if these damages were otherwise cognizable,

the Westerlund Parties argue, the doctrines of equitable and judicial estoppel bar AFP from claiming that WLH's equipment was worth less than $2.55 million.

A.  **Recoverability of Damages**

The Westerlund Parties analogize the Murphy Parties' counterclaims to a situation in which "A" agrees to use its truck to transport crops owned by "B" to market. If "A's" creditor seizes (or threatens to seize) the truck before harvest, "B" can protect itself against the potential loss of its crops by purchasing the truck from the creditor and returning the truck to "A" (or by buying a replacement truck for "A"). Similarly, the Westerlund Parties argue, AFP could have protected itself against the potential loss of its logs by buying WLH's log handling equipment from China National. If China National insisted on overcharging for such equipment, AFP could have bought replacement equipment from another vendor at a more reasonable price. AFP may not, however, simply overpay China National for WLH's equipment and then recover the voluntary overpayment from WLH, according to the Westerlund Parties.

The Murphy Parties dispute the application of the Westerlund Parties' analogy, responding that AFP did not overpay for WLH's equipment solely to provide WLH with equipment needed to provide log handling services. Instead, the Murphy Parties argue, AFP paid China National $1.55 million more than WLH's equipment was worth in exchange for the release by China National of its claims against both WLH and AFP. In support, the Murphy Parties rely upon to the deposition of Robert Michael Moon, Chief Financial Officer of Murphy Overseas Holdings. ECF 82-1 at 2:13-18. Mr. Moon, who was "involved in the negotiations with China National," ECF 82-1 at 4:7-9, states that the $2.55 million payment to China National was

for both WLH's equipment "[a]nd to settle the lawsuits."[1] ECF 82-1 at 4:14-17. The Westerlund Parties reply that Mr. Moon's deposition testimony contradicts the terms of the integrated Settlement.

The Court finds that there is a genuine dispute of material fact as to whether the $1.55 million payment to China National was an overpayment for WLH's equipment, as the Westerlund Parties insist, or in exchange for China National's release of claims, as the Murphy Parties assert. Under Oregon law, "[w]hile extrinsic evidence is admissible to explain an ambiguity in an agreement, such evidence may not be used to negate an express term of a bargained for, fully integrated agreement." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 145 F. Supp. 2d 1211, 1214 (D. Or. 2001). Neither the Settlement, nor the attached Bill of Sale, unambiguously state that the Murphy Parties made the $2.55 million payment to China National exclusively for the purchase of WLH's equipment. In the Settlement, China National agreed to "release[] and forever discharge[]" the Murphy and Westerlund Parties from any liability arising out of its claims in the underlying litigation "[u]pon receipt" of the $2.55 million payment from the Murphy Parties. ECF 71-2 at 2-3 (Settlement ¶ 4). Thus, the Murphy Parties may have made the $2.55 million payment, at least in part, in exchange for China National's release.

The Bill of Sale, which was signed only by WLH and not by AFP, does not compel a different conclusion. In the Bill of Sale, WLH agreed to sell its equipment to AFP "[i]n consideration of Buyer's [AFP] payment of $2,550,000 paid to [China National]." ECF 71-2 at 12. This is only an acknowledgment of WLH's obligations and does not recite that AFP received only WLH's equipment in exchange for $2.55 million. In response, the Westerlund

---

[1] The Westerlund Parties object to Mr. Moon's deposition testimony as inadmissible hearsay to the extent it is based on an alleged appraisal of WLH's equipment by a third party. The Court does not consider that portion of Mr. Moon's testimony.

Parties rely on the fact that the "Seller [WLH] acknowledges that the payment . . . constitutes valuable, fair, and commercially reasonable consideration for the sale of the Equipment to Buyer [AFP]." ECF 71-2 at 12. Only WLH, however, made this representation or acknowledgement, as the "Seller," and only WLH signed the Bill of Sale. Further, even if AFP had made or adopted this acknowledgment, AFP's "payment" secured the release of claims from China National, along with the equipment. Because China National released its claims against both WLH and AFT, this release benefitted WLH, and that benefit can be viewed as part of the consideration that WLH received for its equipment. Thus, viewing the evidence in the light most favorable to the non-moving parties, *i.e.*, the Murphy Parties, the Settlement is ambiguous as to whether the entire $2.55 million payment went solely to purchase WLH's equipment. The Murphy Parties may present extrinsic evidence that they made a portion of that payment in exchange for the release from China National and thus may seek these damages at trial as claimed mitigation expenses.[2]

## B. Equitable Estoppel

The Westerlund Parties also argue that the Murphy Parties are equitably estopped from arguing that WLH's equipment was worth only $1 million because the Murphy Parties agreed that WLH's equipment was worth $2.55 million. According to David Westerlund, he would not have signed the Settlement on behalf of WLH if he knew that AFP would later claim the equipment was worth only $1 million. ECF 72 ¶ 5. As discussed above, however, neither the

---

[2] The Westerlund Parties also argue that the Murphy Parties' $1.55 million in damages are unforeseeable because the Murphy Parties agreed that WLH's equipment was worth $2.55 million, not $1 million. *See Stuart v. Pittman*, 235 Or. App. 196, 206 (2010), *rev'd on other grounds*, 350 Or. 410 (2011) ("In a breach of contract claim, a plaintiff may recover damages that are caused by the breach and that are foreseeable and not speculative"). This argument is unavailing because the Murphy Parties did not agree that WLH's equipment was worth $2.55 million, or at least that is a disputed issue of material fact.

Settlement, nor the Bill of Sale, contains any such express agreement. Moreover, even if the Bill of Sale contained such an agreement, only WLH signed the Bill of Sale, and only WLH, as the "Seller acknowledge[d] that the payment . . . constitutes valuable, fair, and commercially reasonable consideration for the sale of the Equipment to Buyer [AFP]." ECF 71-2 at 12. Thus, equitable estoppel does not apply.

**C. Judicial Estoppel**

Finally, the Westerlund Parties argue that the Murphy Parties are judicially estopped from arguing that WLH's equipment was worth only $1 million because the Murphy Parties represented in the Clatsop County Circuit Court that WLH's equipment was worth $2.55 million in order to secure the sale of the equipment. At the time, the equipment was in receivership. In their "Joint Motion to Provide for and Approve Sale of Equipment," the Murphy and Westerlund Parties jointly moved for an order

> [a]llowing, approving and ordering Murphy to pay $2,550,000 directly to China National in settlement of this matter. After receipt of such payment China National will assign any security interest it may have in the Equipment to Murphy. The terms of the settlement also include the parties' agreement to dismiss this case, which will take place after the above transactions are complete, and the receivership closed.

ECF 71-4 ¶ 2. The parties also jointly stated:

> Because the parties have agreed that the Property described in the Order Appointing Receiver will be sold by WLH to Murphy, that Murphy will pay $2,550,000 to China National, that China National will then assign its interests in the Equipment to Murphy, and that the claims can then be dismissed pursuant to separate settlement agreements, there is no further need for the Receiver's services.

ECF 71-4 ¶ 3. The Joint Motion , however, does not state that the equipment itself is worth $2.55 million. Rather, it expressly states that the $2.55 million payment is "in *settlement* of this matter." ECF 71-4 ¶ 2 (emphasis added). Thus, judicial estoppel does not apply.

PAGE 8 – OPINION AND ORDER

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (ECF 70) is DENIED.

**IT IS SO ORDERED**.

DATED this 21st day of June, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge